1   Bruce H. Jackson, State Bar No. 98118
        bruce.h.jackson@bakernet.com
2   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
3   San Francisco, CA  94111-3802
    Telephone: +1 415 576 3000
4   Facsimile:  +1 415 576 3099

5   Attorneys for Defendant
    NATIONAL TOBACCO COMPANY, LP

6

7

8                   UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12   TIMOTHY PARKER and XAVIER MOSLEY,          **Case No.  C-08-01933 WHA**
     p.k.a. Blackalicious,
13                                              **DECLARATION OF MARCELLA**
                  Plaintiffs,                   **BALLARD IN SUPPORT OF MOTION**
14                                              **BY DEFENDANT NATIONAL**
            v.                                  **TOBACCO COMPANY TO DISMISS,**
15                                              **STAY OR TRANSFER IN FAVOR OF**
     NATIONAL TOBACCO COMPANY LP,               **FIRST-FILED ACTION IN NEW**
16                                              **YORK; OR, IN THE ALTERNATIVE,**
                  Defendant.                    **TO TRANSFER FOR THE**
17                                              **CONVENIENCE OF THE PARTIES**
                                                **AND WITNESSES UNDER 28 U.S.C.**
18                                              **§ 1404(a)**

19                                              **Date:     June 19, 2008**
                                                **Time:    8:00 a.m.**
20                                              **Crtrm: 9, 19th Floor**
                                                **Before: The Honorable William H. Alsup**
21
                                                **[FILED VIA E-FILING]**
22

23

24

25

26

27

28

NYCDMS/1085689.1

I, Marcella Ballard, declare as follows:

1.    I am Of Counsel in the law firm of Baker & McKenzie LLP, counsel for National Tobacco Company LP ("NTC"), defendant in the above-captioned action. I am a member in good standing of the State Bar of New York, and am duly admitted to practice in New York. I have personal knowledge of the matters set forth herein, and, if called as a witness, I could and would testify competently thereto.

2.    I make this declaration in support of NTC's Motion to Dismiss, Transfer or Stay in Favor of First-filed Action in New York; or, in the Alternative, to Transfer for the Convenience of the Parties and Witnesses under 28 U.S.C. § 1404(a).

3.    On March 28, 2008, NTC received a letter from Plaintiffs' counsel, which was forwarded to me on April 1, 2008, requesting a response by April 4, 2008.

4.    The March 28, 2008 letter stated, in relevant part:

> Our offer will remain open until April 4, 2008. If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likenesses and biographies by a tobacco company so as to mitigate any further damages to their reputation. My clients will also file suit in California and Oregon (I am licensed in both states).

5.    On April 4, 2008, I sent a response, in which NTC rejected counsel's demands and stated that I would discuss the matter with him on that date. Annexed hereto as Exhibit 1 is a true and correct copy of a letter from me to Anthony McNamer, dated April 4, 2008.

6.    Also on April 4, 2008, I spoke with counsel on the telephone and discussed the possibility of settlement. We were unable to resolve the matter.

7.    In the evening of April 4, 2008, I filed a Complaint on behalf of NTC in the United States District Court, Southern District of New York.

8.    On April 7, 2008, I sent a file stamped copy of the Complaint to counsel, to which I received an email response, stating *inter alia*, that "instead of facing claims by 3 groups [plaintiffs and Blackalicious], your client will now likely be facing claims by 30-40 groups. My clients have contacts with nearly every artist that appeared on the site."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

9.      On April 9, 2008, I amended NTC's April 4, 2008 Complaint as of right to add New York state tort claims based on the representations in Plaintiffs' April 7 response. The Amended Complaint, a true and correct copy of which is attached hereto as Exhibit 2, relates back to the April 4, 2008 Complaint.

10.     On April 11, 2008, a full week after I filed NTC's Complaint in New York, counsel filed two actions in the Northern District of California. A true and correct copy of the Complaint in this action is attached hereto as Exhibit 3. A true and correct copy of the Complaint in the other action (which was filed earlier than this case), Case No. C08-01931, is attached hereto as Exhibit 4.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May 5, 2008 at New York, New York.

Marcella Ballard

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# EXHIBIT 1

**BAKER & MCKENZIE**

Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036, USA

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakernet.com

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Düsseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

## RULE 408 COMMUNICATION

Marcella Ballard
Tel: +1 212 626 4664
Marcella.Ballard@Bakernet.com

Via Email anthony@mcnamerlaw.com

April 4, 2008

Anthony McNamer
McNamer and Company
519 SW Third Avenue, Suite 601
Portland, Oregon 97204

RE:    Your clients Blackalicious, Boots Riley and Lifesavas
     File No.:    56209771.1

Dear Mr. McNamer:

We represent North Atlantic Trading Company in litigation matters and I received your March 28, 2008 letter in which you have contended that the "unlicensed and illegal" use of your clients' likeness on the ZigZagLive.com website violates the Lanham Act 15 U.S.C. § 1125(a)(1)(A), California Civil Code § 3344 and Oregon common law.

We disagree with your contentions in all respects. To violate the Lanham Act as you know, one must make a false description of fact that is likely to confuse consumers. All three of your clients in fact appeared numerous times on the ZigZagLive concert tour in 2007, as part of or with the group Galactic. Thus it is neither false nor "confusing" for concertgoers to see accurate representations on the ZigZagLive website concerning artists that actually appeared at performances on the ZigZagLive concert tour. Yes, your clients' fans probably saw them on a stage that they voluntarily stepped onto under a "tobacco product" banner on a "corporate" tour.

The fact that your clients willingly appeared multiple times on the ZigZagLive tour completely debunks your claim that your clients are particularly damaged by their association with a company that sells tobacco products. Perhaps Boots Riley would like to donate the Zig-Zag guitar to charity that he readily accepted while participating in the tour, if he is conflicted.

To violate California Civil Code § 3344 (which I presume you have invoked based on the possible domicile in California of one or more of your clients) requires a knowing use, without consent, of a likeness in order to sell goods. As noted, your clients appeared on the ZigZagLive tour voluntarily with the group Galactic. The material for the tour and Galactic's participation was all pursuant to an agreement, approved by the band's management, and undertaken with full advance notice and consent. Perhaps your clients should consult with Galactic (with whom they are still touring apparently) for compensation they believe they are owed.

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

EXHIBIT

**BAKER & McKENZIE**

§ 3344 follows the "single publication rule" so your purely speculative reference to the possible "millions" of website viewings is irrelevant. Moreover your calculation of damages as including every single performance that your three clients have allegedly participated in over the past few years bears no relationship whatsoever to either the Lanham Act or § 3344 damages, which are specifically enumerated in each statute. We thus cannot offer to pay the amounts you have demanded in your March 28 letter.

Without any waiver of our rights or legal positions my client has taken down the references to Blackalicious, Boots Riley and Lifesavas in the "Artist" section of the ZigZagLive website (which in any event were nothing more than an accurate biography and a link to the artist's websites). In addition to the other deficiencies noted above, the accurate reporting on the ZigZagLive website about bands that actually appeared on the tours falls within the newsworthiness exception to statutory right of publicity law. Notwithstanding that defense and the other deficiencies in your claims, we have taken down the "Artist" pages from the website to accommodate your concerns.

Of course, your clients may choose to make any lawful public statements they wish, but we will look very seriously at any misstatement of fact made by them. We do not wish to engage in litigation over what appears to be a dispute not with my client, but between your clients and Galactic. We believe that your letter is based on a fundamental misunderstanding, and perhaps you did not know that your clients willingly appeared on stage under Zig-Zag banners, and on the ZigZagLive tour when you wrote it. To that end, I look forward to speaking with you upon your receipt of this correspondence and I will give you a call to discuss it later today.

Sincerely,

Marcella Ballard

cc: James W. Dobbins, Esq.

# EXHIBIT 2

Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
T: 212.626.4100
F: 212.310.1600

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
APR 09 2008
U.S.D.C. S.D N.Y.
CASHIERS

---

National Tobacco Company, LP

          Plaintiff,

       -against-

Timothy Parker and Xavier Mosley p.k.a.
Blackalicious, Raymond Riley p.k.a. Boots
Riley, Solomon David and Marlon Irving,
p.k.a., Lifesavas,

          Defendants.

Case No.  08 CV 03383 (SAS)

**AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT, INJUNCTIVE
RELIEF SOUGHT**

---

      Plaintiff National Tobacco Company LP ("NTC") by its attorneys Baker &

McKenzie LLP, for its complaint against defendants Timothy Parker and Xavier Mosley,

p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and Solomon David and Marlon

Irving, p.k.a. Lifesavas ("Defendants") alleges as follows:

## PARTIES

    1.     Plaintiff NTC now is, and at all times relevant to the complaint has been, a

Delaware limited partnership with a principal place of business in Louisville, Kentucky.

    2.     Upon information and belief, Defendant Blackalicious is a musical group

whose members Timothy Parker and Xavier Mosley are domiciled in California, and who

                           EXHIBIT $2$

have also performed with or as part of the band Galactic.

3.      Upon information and belief, Defendant Raymond Riley p.k.a. Boots Riley is domiciled in California named Raymond Riley, who performs musically both on his own, as a part of the band The Coup and with or as part of the band Galactic.

4.      Upon information and belief, Defendant Lifesavas is a musical group whose members Solomon David and Marlon Irving are domiciled in Portland, Oregon, and who have also performed with or as part of the band Galactic.

### JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction under the United States Lanham Act, 15 U.S.C. § 1051 *et seq.,* for a declaratory judgment of non-infringement.  The jurisdiction of this Court is founded also on 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202 for causes of action arising under the Lanham Act and the Declaratory Judgment Act.  Jurisdiction is founded on 28 U.S.C. §§ 1332 and 1367 for other causes of action.

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

7.      This court has personal jurisdiction over the Defendants, who have performed in concerts numerous times at theatres and venues, sold goods and services, and participated in concert tours in this judicial district.  A showbill for Defendants' November 17, 2007 concert in New York, New York is attached as Exhibit 1.  Each of the Defendants have also advertised and offered goods and services on an interactive retail website that can be reached from New York.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c)

2

because Defendants are subject to personal jurisdiction here, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

9.     Venue is further proper in this District pursuant to a forum selection clause in an Artist Sponsorship Agreement (the "Agreement," attached as <u>Exhibit 2</u>) between Plaintiff and Galactic Funk Touring, Inc., pursuant to which the Defendants appeared in concert as part of the ZigZagLive concert tour.

10.     An actual case or controversy has arisen between the parties.

11.     Defendants have threatened litigation against Plaintiff and assert that Plaintiff's truthful and accurate use of Defendants' names and likenesses constitutes trademark infringement and violates Defendants' statutory and common law rights of publicity.

12.     Defendants further have threatened to tarnish and disparage Plaintiff's business reputation and goodwill by spreading injurious falsehoods regarding Plaintiff's business practices and fair and proper use of news and public domain information to other artists and bands with whom Plaintiff has business and/or contractual relationships.

13.     These statements threaten irreparable harm to Plaintiff's reputation, goodwill and business in an amount that is incalculable.

### FACTUAL ALLEGATIONS

14.     Plaintiff NTC, through a license of its indirect parent company, is the exclusive distributor in the United States (and Canada) for the Zig-Zag® cigarette paper products.

15.     The Zig-Zag® cigarette paper products are over a century old and have, over time, developed tremendous secondary meaning and customer goodwill.

16.    NTC and its predecessor in interest have spent hundreds of thousands of dollars in the United States promoting the Zig-Zag® brand which has come to signify quality products emanating from a reliable source.

17.    Zig-Zag Live Club Tour 2007 promotes a concert tour ("ZigZagLive") throughout the United States and here in New York City in which various bands perform at multiple venues with Plaintiff's sponsorship.

18.    There is a website related to Zig-Zag Live Club Tour 2007 at the URL www.zigzaglive.com on which viewers may learn about various musical guests in the ZigZagLive tour and the concert schedule.

19.    On or about October 9, 2007, Plaintiff, through the Zig-Zag Live Club Tour 2007, entered into an Agreement with a business entity Galactic Funk Touring, Inc., which granted Plaintiff the right to sponsor certain concerts on November 2, 6, 17 and 18, 2007, featuring the Galactic Funk Touring group.  (Ex. 2.)

20.    The Galactic Funk Touring group signed the Agreement by its representative who appeared to have control and give consent on behalf of Defendants as a part of the Galactic Funk Touring group.

21.    Plaintiff reasonably relied on Galactic Funk Touring group's agent in entering into the Agreement and at all times Plaintiff justifiably relied on the agent's representations.

22.    Plaintiff understood Galactic Funk Touring group to be the artists who performed as and with the band Galactic on the ZigZagLive concert tour in 2007.

23.    The Agreement allowed Plaintiff to market and advertise these concerts on television, radio, print, and internet, as well as on displays at concert venues, with

4

approval by Galactic Funk Touring's representative, and to publish biographies and

photographs of the performing artists in such advertising. (Ex. 2, at ¶ 2.)

24.    The Agreement provided that the rights and obligations of the parties to the

Agreement would be governed by the law of the state of New York, and that any action

arising from or related to any provision of the Agreement shall be determined to be under

the jurisdiction of the courts of the State of New York in New York county, and the

courts of the United States of America in the Southern District of New York. (Ex. 2, at ¶

9.)

25.    The Agreement is between two parties domiciled in New York City. (Ex. 2.)

26.    Plaintiff used artwork and band names from press releases obtained from

Galactic Funk Touring's website, at http://www.galacticfunk.com/presskit, to design the

marketing and advertising materials.

27.    Defendants' names are listed as artists performing with Galactic Funk Touring

multiple times on Galactic Funk Touring's website, as shown in screen captures from that

website, attached as Exhibit 3 to this Complaint.

28.    Galactic Funk Touring's representative gave approval and consent for artwork

and showbills for the 2007 ZigZagLive tour both orally and in writing to Plaintiff.

29.    Plaintiff reasonably relied on Galactic Funk Touring's agent and the apparent

authority he had to approve and authorize use of Defendants' names and likenesses. (*See*

Ex. 2, Ex. 3.)

30.    Using the artists' names, including those of Defendants, and artwork provided

by and approved by Galactic Funk Touring's representative, Plaintiff truthfully

advertised the four concerts for which it had contracted with Galactic Funk Touring in

various media, including the ZigZagLive website.

31.    Defendants willingly appeared on stage with, and performed as a part of, Galactic Funk Touring during the ZigZagLive Tour 2007.

32.    Defendants Boots Riley and Lifesavas appeared as vocalists on stage with Galactic Funk Touring on all four dates set forth in the Agreement.

33.    Defendant Blackalicious appeared as a special guest artist on the tour.

34.    At no time was Plaintiff ever given reason to belief that Defendants were appearing on the ZigZagLive tour in any capacity other than as Galactic Funk Touring.

35.    Upon information and belief, on the dates of the concerts covered by the Agreement, all concert venues included prominent signs, banners and other advertising, including a promotional exhibition table and in-person representatives, listing ZigZagLive as the sponsor of the concert.  (See Ex. ¶ 2.)

36.    Upon information and belief, Defendants knew that they were performing in conjunction with the ZigZagLive Tour 2007, and that it was sponsored by Plaintiff.

37.    Upon information and belief, Defendant Boots Riley repeatedly requested a "ZigZagLive Tour 2007" guitar from Plaintiff's tour managers and agents.

38.    Defendants never complained to Plaintiff about Plaintiff's endorsement of the ZigZag Live Tour 2007 while performing with and as a part of Galactic Funk Touring.

39.    Defendants never complained about the showbills, the Zig-Zag banners or the other promotional materials at the venues and stages on which they performed.

40.    Months after participating in Plaintiff's concert tour, on March 28, 2008, Defendants wrote to Plaintiff through counsel asserting that Defendants would not have knowingly been associated with Plaintiff's business, and that Plaintiff's posting materials

6

relating to Defendants on the ZigZagLive website infringes Defendants' rights under, *inter alia,* 15 U.S.C. § 1125(a)(1)(A), California Civil Code § 3334 and Oregon common law, and demanded that Plaintiff cease and desist from posting information about Defendants participation on the 2007 tour on the ZigZagLive website, among other things.

41.    In the March 28, 2008 letter, Defendants' counsel stated Defendants' intention, if Plaintiff did not pay hundreds of thousands of dollars to Defendants by April 4, 2008, to publish injurious false statements *i.e.,* to make public statements "decrying" the relationship of Defendants to Plaintiff and about Plaintiff and Plaintiff's business practices related to the ZigZagLive Tour.

42.    On April 4, 2008 Plaintiff wrote to Defendants through counsel rejecting Defendants' demands.

43.    As a show of good faith, and without waiving any of its rights, Plaintiff removed all references to Defendants from its website, despite being justified in the use of such materials.

44.    Plaintiff explained in the April 4, 2008 letter that, among other reasons, because Defendants each willingly participated in the ZigZagLive 2007 concert tour, they had no basis to complain about the accurate and factually correct representations on Plaintiff's website.

45.    Counsel for the parties corresponded after the exchange of the above correspondence and were unable to resolve the matter.

46.    On April 7, 2008, upon receiving notice that Plaintiff initiated this declaratory judgment action against Defendants, Defendants' counsel responded to Plaintiff's

counsel: "Did it occur to you and your client that now, instead of facing claims by 3 groups, your client will now likely be facing claims by 30-40 groups. My clients have contacts with nearly every artist that appeared on the site." (Email from Anthony McNamer to Marcella Ballard, April 7, 2008, attached as Exhibit 4 to this Complaint).

47.    Upon information and belief, Defendants have untruthfully stated to "thirty to forty" other artists and bands, with whom Plaintiff has business and contractual relationships, that Plaintiff has illegally and improperly conducted its business and that Plaintiff has infringed upon rights belonging to those bands and Defendants.

48.    Upon information and belief, Defendants have encouraged these thirty to forty other artists and bands to bring similar unwarranted suits against Plaintiff.

49.    Upon information and belief, Plaintiff has experienced injury to its business reputation and business and contractual relationships with the above mentioned artists and bands.

50.    By reason of Defendants' claims of infringement, and Defendants' injurious falsehoods a real and justiciable controversy exists concerning Plaintiff's rights with respect to their factual and accurate reporting on the ZigZagLive website concerning Defendants and uncertainty will continue to exist unless the issue between Plaintiff and Defendants is resolved.

51.    Plaintiff cannot quantify the damage to its reputation, business, goodwill, and the ZigZagLive tour as a result of Defendants' acts, and will suffer irreparable harm in the absence of injunctive relief.

8

## PLAINTIFF'S FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT

52.    Plaintiff incorporates by reference all of the allegations in the preceding paragraphs.

53.    This action is brought under the provisions of 28 U.S.C. § 2201 for the purpose of determining a question in actual controversy between Plaintiff and Defendants.

54.    In light of Defendants' claims of infringement of their alleged trademarks, rights of publicity and other common law rights, Plaintiff has a reasonable belief and imminent fear that Defendants will raise issues relating to alleged trademark infringement under 15 U.S.C. § 1125(a), California Civil Code § 3334 and Oregon common law.

55.    Plaintiff denies any and all claims of liability for such alleged violations of Defendants' rights.

56.    Plaintiff has not engaged in any acts either with knowledge that such acts infringe Defendants' rights or with the intent to cause confusion or mistake, or to deceive the consuming public.

57.    There is no false representation or likelihood of confusion where Defendants have each participated in the ZigZagLive concert tour.

58.    There is a substantial and justiciable controversy between Plaintiff and Defendants as to whether Plaintiff's posting on the ZigZagLive website relating to Defendants infringes Defendants' rights under the Lanham Act, 15 U.S.C. §1125(a)(1)(A), California Civil Code § 3334 or Oregon common law, and as to whether Defendants have any legitimate right to continue to threaten to make injurious public statements, interfere with Plaintiff's contractual relations or maintain an action for

9

alleged infringement under the Lanham Act or any other statute or common law against
Plaintiff.

59.     Absent injunctive relief, Plaintiff has no means by which to continue to
truthfully and accurately advertise their ZigZagLive touring services. Plaintiff has been
and will continue to be irreparably harmed. No amount of money damages can
adequately compensate Plaintiff for the harms to its reputation and goodwill through the
threat of litigation, the making of false public statement, the interference with Plaintiff's
contractual relations and for Plaintiff's inability to continue to run its businesses without
interference.

60.     By reason of the foregoing, Plaintiff is entitled to an injunction enjoining
Defendants and all those acting in concert with them, from continuing to make these or
any further misrepresentations.

## PLAINTIFF'S SECOND CAUSE OF ACTION:
## DEFAMATION

61.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

62.     Upon information and belief, Defendants have negligently and maliciously
made false statements regarding Plaintiff's business practices, without Plaintiff's
authorization, to third parties which have caused Plaintiff irreparable harm, injuries and
damages.

63.     Absent injunctive relief, Plaintiff has no means by which to protect its
business reputation and goodwill. Plaintiff has been and will continue to be irreparably
harmed. No amount of money damages can adequately compensate Plaintiff for the harm
to its business reputation and goodwill.

64.     By reason of the foregoing, Plaintiff is entitled to an injunction enjoining

10

Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

65.     Plaintiff is also entitled to damages in an amount not yet determined.

## PLAINTIFF'S THIRD CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH CONTRACT

66.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of this complaint.

67.     Plaintiff has entered into lawful and valid contracts with various artists and bands in conjunction with its ZigZagLive Tour.

68.     Defendants knew of Plaintiff's lawful and valid contracts with these artists and bands.

69.     Upon information and belief, Defendants have intentionally interfered with Plaintiff's contracts with other bands and artists by dishonest, unfair, and improper means.

70.     Plaintiff has been damaged by Defendants·wrongful conduct.

71.     Absent injunctive relief, Plaintiff has no means by protect its contracts between itself and the artists and bands with whom it has contractual relationships. Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff for the harms to its business, reputation and goodwill.

72.     By reason of the foregoing, Plaintiff is entitled to an injunction enjoining Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

73.     Plaintiff is also entitled to damages in an amount not yet determined.

11

## PLAINTIFF'S FOURTH CAUSE OF ACTION:
### TRADE LIBEL

74.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of this complaint.

75.     Upon information and belief, Defendants have knowingly made bad faith representations to third parties of false and derogatory information regarding Plaintiff's business, calculated to prevent these third parties from doing business with Plaintiff.

76.     Upon information and belief, these representations place Plaintiff in danger of a lawsuit and are substantial factors in inducing the third parties to end or not enter into business dealings with Plaintiff.

77.     Absent injunctive relief, Plaintiff has no means by protect its business, its goodwill or its reputation.  Plaintiff has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Plaintiff for the harms to its reputation and goodwill.

78.     By reason of the foregoing, Plaintiff is entitled to an injunction enjoining Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

79.     Plaintiff is also entitled to damages in an amount not yet determined.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants for:

    a.   an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

    b.   an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not violate California Civil Code § 3334;

c.  an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not violate Oregon common law;

d.  an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not infringe any rights of Defendants and that Defendants' asserted claims of infringement against Plaintiff are invalid;

e.  an order permanently enjoining and restraining Defendants from instituting any action against Plaintiff for violating 15 U.S.C. §1125(a)(1)(A), California Civil Code § 3334, Oregon common law, or any other property rights of Defendants;

f.  an order permanently enjoining and restraining Defendants and their officers, employees, agents, representatives and licensees from further asserting that Defendants' publicity rights or other property rights in their names and likenesses are infringed by Plaintiff's truthful and accurate use;

g.  an order permanently enjoining and restraining Defendants and their officers, employees, agents, representatives and licensees from further asserting to any parties with whom Plaintiff has a business or contractual relationship that Plaintiff's business practices are unlawful and from further interfering with Plaintiff's contractual relationships;

h.  an order permanently enjoining and restraining Defendants and their officers, employees, agents, representatives and licensees from further making false and derogatory statements regarding Plaintiff's business practices to third parties;

i.  damages in an amount to be determined by this Court;

j.  enhanced damages under the Lanham Act and punitive damages under New York state law;

k.  attorneys' fees;

l.  costs of this action; and

m.  such other and further relief as this Court deems just and proper.

Dated: April 9, 2008

By: _____
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10009
T: 212.626.4100
F: 212.310.1600

# Exhibit 1



# Exhibit 2

**Zig-Zag Live 2007**
**ARTIST SPONSORSHIP AGREEMENT**

SPONSORSHIP AGREEMENT (the "Agreement"), dated as of October 9, 2007, by and between **Galactic Funk Touring Inc** ("You" or "Your") and **CMJ Network Inc., as agent of and on behalf of the Zig-Zag Live Club Tour 2007** ("ZZL"), with offices located at **151 W 25th St, 12 Floor, New York NY 10001** (each a "Party" and collectively the "Parties").

1. SUBJECT OF AGREEMENT
In consideration of the mutual covenants and agreements set forth herein and in reliance upon the representations and warranties contained herein, and for other good and valuable consideration, you and ZZL agree as of the above date as follows:

You agree that ZZL will sponsor your performance ("Performance") as part of the Zig Zag Live Club Tour 2007 ("Tour") on the dates listed below, at the venues named below. The Agreement shall be wholly separate and distinct from any agreement You may have with the venue referenced below for Your performance on the date referenced below.

Dates: **November 2, 6, 17, 18, 2007**

Venues: **Georgia Theatre** (November 2), **Lincoln Theatre** (November 6), **Roseland** (November 17), **Paradise Rock Club** (November 18)

2. SIGNAGE, ADVERTISING, TABLE PLACEMENT AND MARKETING
You agree to allow the display by ZZL of banners, posters and/or other signage at your Performance on the date(s) and venue(s) listed above, with such signage to be of the following nature and size:

No more than 1 neon Zig Zag sign (approximately 33" x 25" x 10")
No more than 1 banner (approximate size 36" x 48")

Such signage is to be displayed in the following locations at the venue (subject to venue approval):
1 neon sign by a ZZL exhibition table or in an appropriate and acceptable space in the performance area or behind the bar but not on, next to, or hanging over the stage Banner may be displayed throughout the venue other than on, next to, or hanging above stage
(ZZL will make best effort to keep signage out of performance area when venue space allows for it.)

Additionally ZZL will also have an exhibition table and its representatives present at the venue at the table during Your Performance. Notwithstanding the foregoing, if the venue refuses to allow the signage, table, and/or representatives, this will not be considered a breach of the Agreement. ZZL will arrange all on-site details; you are not responsible for making any on-site arrangements (hanging banner, setting up table, etc).

Further, You authorize and approve ZZL to advertise and promote your Performance in any manner deemed appropriate by ZZL including but not limited to: television, radio, print and the Internet ("ZZL Marketing") unless expressly prohibited by law. You also authorize and approve that ZZL has the rights to use the Your name, approved voice and/or approved

likeness for the purposes of advertising and marketing the Tour without further compensation, unless prohibited by law. Where possible, ZZL will provide all ZZL Marketing to you for approval. ZZL Marketing includes the use of your approved musical compositions in the form of streamed audio (one song) and downloadable audio (one song, different from the streamed song), Your artist/band biography and approved photo or approved portions thereof on www.zigzaglive.com, or in advertisement and/or in the promotion of the Tour. Material provided by you will be available for free download for the period of October 1, 2007 – December 31, 2007. Upon expiration of download period, songs will be removed from the www.zigzaglive.com site. Songs remain registered and published intellectual property of you and usage by ZZL Marketing does not constitute transfer of ownership. ZZL shall not use your name, likeness, or songs in a manner which would infer that you endorse ZZL or promote its products in any way.

## 3. COMPLIMENTARY TICKETS
ZZL and agent Partisan Arts will arrange for up to ten (10) complimentary tickets to ZZL from the promoter/venue.

## 4. CONSIDERATION
In consideration of ZZL's sponsorship of your Performances, ZZL agrees to remit to you a fee in the aggregate sum of **$9000** ("Sponsorship Fee"). The Sponsorship Fee shall be paid via ZZL corporate check in the sum of **$4500** within 2 weeks of execution of this Agreement with the remaining **$4500** of the Sponsorship Fee to be paid (in the amount of **$1125** per Performance) immediately upon successful completion of each of the three Performances.

## 5. NO PARTNERSHIP OR JOINT VENTURE
Nothing contained herein shall in any way create any association, partnership, joint venture, or the relation of principal and agent between the parties hereto or be construed or evidence the intention of the parties to constitute such. Neither of the parties hereto shall hold itself out contrary to the terms of this provision.

## 6. RELEASE AND INDEMNITY
The Parties agree to indemnify and hold each other harmless and each of its successors and assigns, and its affiliates, officers, directors, shareholders, and employees, and their respective agents (collectively, the "Indemnities") from any and all manner of actions and causes of action, damages, liabilities, judgments, claims and demands whatsoever (or actions or proceedings in respect thereof) (collectively, "Damages"), which will, for all purposes of this Agreement include, but not be limited to, all costs of defense and investigation and all reasonable attorneys' fees and expenses, to which any Indemnities may become subject, insofar as such Damages arise out of or are based upon the Parties performance according to the terms and conditions contained herein or related thereto, whether any action, claim, suit, or proceeding giving rise to such Damages is instituted by or brought on behalf of the Parties or a third party, provided reduced to adverse judgment or settled with consent, except that neither Party shall be so indemnified to the extent that such Damages have arisen out of such Party's gross negligence, bad faith, willful misconduct or malfeasance in connection with the performance by that Party of its responsibilities hereunder. The provisions of this Section 5 shall survive termination of this Agreement.

## 7. LIMITATION OF LIABILITY
Other than due to gross negligence, bad faith, willful misconduct or malfeasance, neither Party will be liable to the other party or any third party for lost profits, loss of goodwill, or any special, indirect, consequential or incidental damages, however caused and on any theory of liability, arising in any way out of this Agreement or the relationship between the Parties. This limitation shall apply even if a party has been advised of the possibility of such damages, and notwithstanding any failure of

essential purpose of any limited remedy. Notwithstanding the foregoing, ZZL specifically warrants that it will not do anything that will subject you to criminal or civil liability or penalties.

## 8. CONFIDENTIALITY; GENERAL PROVISIONS

The Parties agree that they will not use, or permit the use of, any of the information relating to any other Party hereto, furnished or to be furnished to each other in connection with this Agreement ("Information"), other than in connection with the transactions contemplated by this Agreement. The Parties also agree that they will not disclose, divulge, provide or make accessible (collectively, "Disclose") any of the Information to any person other than their responsible officers, employees, advisors, accountants or attorneys without the prior written consent of the other Party except as required by law or regulation.

The parties hereto agree that all understandings and agreements heretofore made between them with respect to the subject matter hereof are merged in this Agreement, which fully and completely expresses their agreement with respect to the subject matter hereof. There are no promises, agreements, conditions, understandings, warranties, or representations, oral or written, express or implied, between the parties hereto, other than as set forth in this Agreement. All prior agreements among the parties with respect to the subject matter hereof are superseded by this Agreement, which integrates all promises, agreements, conditions and understandings between the parties with respect to the subject matter hereof.

No waiver, modification or amendment of this Agreement shall be binding unless agreed to in writing and signed by an authorized officer of each of the Parties.

The parties acknowledge that (i) they have each had the opportunity to consult with independent counsel of their own choice concerning this Agreement and have done so to the extent they deem necessary, and (ii) they have each read and understand the Agreement, are fully aware of its legal effect, and have entered into it freely based on their own judgment and not on any promises or representations other than those contained in the Agreement.

## 9. GOVERNING LAW AND CHOICE OF FORUM

This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. Each party hereby irrevocably submits that the proper forum for any action of any type, whether legal or equitable in nature, brought by either party to this Agreement, which action arises from or is related to any provision of this Agreement, shall be deemed to be under the jurisdiction of the courts of the State of New York, sitting in New York County, and the courts of the United States of America for the Southern District of New York.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

By:_____

Robert K. Haber

**FOR ZZL**
**151 W 25th St, 12 Floor, New York NY 10001**
**Fax: 917.606.1914**

By: _Galactic Funk Touring, Inc._
_Soulshift Management, Ind. Manager_
_____

_Paul Peck_
Print Name

_Manager_
**AFFILIATION WITH ARTIST**

_64 West 3rd St. - Suite 205_
**Address**      _New York, NY 10003_

# Exhibit 3



**NEWS**

## GALACTIC BONNAROO SHOW RECAP



PHOTO BY RYAN MASTRO

As most are aware, Galactic assembled a staggering assembly of hip hop talent for their late night show at Bonnaroo. The band debuted a large number of selections from their upcoming record 'From the Corner to the Block' alongside a variety of their classic high energy instrumentals throughout. As they are prone to do at Bonnaroo, Galactic delivered another remarkable set. This time they played for 3 and a half hours straight with no setbreak. Special guests included Boots Riley of the Coup, Chali 2na of Jurassic 5, Mr. Lif, Lyrics Born, Lateef the Truth Speaker, Gift of Gab of Blackalicious, Nino Moschella and more. Galactic's new record comes out on Anti- August 21st.

UPDATE ... READ THE LATEST

# Exhibit 4

**From:** Anthony McNamer [mailto:anthony@mcnamerlaw.com]
**Sent:** Monday, April 07, 2008 2:39 PM
**To:** Ballard, Marcella
**Cc:** Anthony McNamer
**Subject:** Re: Attached Complaint

An interesting move on your client's part. Did it occur to you and your client that now, instead of facing claims by 3 groups, your client will now likely be facing claims by 30-40 groups. My clients have contacts with nearly every artist that appeared on the site.

In any event, I will let you know about the acceptance in due course. I am not a New York lawyer, as you know.

You should have our complaint on Wednesday. Let me know if your firm will accept service for that.

We're still amenable to settlement of this matter. If your client is interested in settlement, it should make that interest clear immediately, before this reaches a scale that will dramatically decrease any chance of settlement.

**Anthony E. McNamer, Esq.**
**McNamer and Company**
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*

On Apr 7, 2008, at 9:36 AM, Ballard, Marcella wrote:

Mr. McNamer:
Attached is a complaint filed April 4, 2008. Please reply by return email whether you will accept service on behalf of the named defendants. Also attached is USDC SDNY waiver of service form. Be advised that if you do not accept service and end up representing the named defendants, your clients will be liable for the costs of service for the summons and complaint. I have also enclosed Judge Scheindlin's rules and procedures.

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Click here or visit www.bakernet.com/disclaimer_bm for other important information concerning this message.
<Waiver of Service.pdf><Complaint_08CV03383.pdf><Judge Scheindlin Rules.pdf>

Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
T: 212.626.4100
F: 212.310.1600

*Attorneys for Plaintiff*

United States District Court
Southern District of New York

| | |
|---|---|
| National Tobacco Company, LP | Case No.   08 CV 03383 (SAS) |
| Plaintiff, | |
| -against- | |
| Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving, p.k.a., Lifesavas, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by email and regular mail a copy of this Amended Complaint on April 9, 2008, on counsel for Defendants at the address set forth below:

Anthony E. McNamer, Esq.
McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204

email: anthony@mcnamerlaw.com

Dated: April 9, 2008

By: _____

Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10009
T: 212.626.4100
F: 212.310.1600

# EXHIBIT 3

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon 97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

E-filing

FILED

APR 1 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY PARKER** and **XAVIER MOSLEY** p.k.a. Blackalicious<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT**. | Case No. **C08-01933** WHA<br><br>**COMPLAINT FOR:**<br><br>1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**<br>2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**<br>3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 *et. seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

For their complaint against Defendant, Plaintiffs allege as follows:

## I.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

arises under the unfair competition laws of the United States.   The Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT

EXHIBIT 3

amount in controversy exceeds $75,000.

2.     This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.     Plaintiffs Timothy Parker and Xavier Mosely reside in Alameda County,

California and are professionally known as the musical group Blackalicious.

4.     Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

5.     Blackalicious is a seminal indie hip hop group.  Blackalicious has always been at

the forefront of the "positive" rap movement.  Their lyrics are often spiritual, introspective and

uplifting rather than violent or misogynistic.

6.     National Tobacco is a large tobacco company.  Through a license, they are the

exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

7.     Beginning in April 2006, National Tobacco began an enormous national and

international marketing campaign centered on the website ZigZagLive.com (the "Website").  As

part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live

Club Tour (the "Tour"), which began in 2006 and continues to this day.  On information and

Page 2 – PLAINTIFFS' COMPLAINT

belief National Tobacco paid musical artists to sponsor and promote their products. National Tobacco entered into agreements with sponsored artists granting National Tobacco specific rights to use sponsored artists' names, likenesses, and biographies on the Website. These sponsored and endorsing artists were featured prominently on the Website, and the Tour also featured these sponsored artists along with many other non-sponsored artists. Blackalicious never played a single date on the Tour, either as a sponsored artist or on a bill with a sponsored artist.

8.    On information and belief National Tobacco spent millions of dollars on this ZigZagLive.com marketing campaign and continues to use the Website to promote its products. Indeed, the ZigZag.com website contains almost no content. The Website, however, contains substantial content and accounts for nearly all of Zig-Zag's web presence.

9.    On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

10.    On or about June 12, 2006 National Tobacco began using Blackalicious's name, photograph and biography to promote Zig-Zag brand products on the Website. National Tobacco continued to use Blackalicious's namejune, photograph and biographies to promote its products through April 4, 2008. A true and correct copy of the unauthorized Blackalicious promotional materials used by National Tobacco on the Website, which falsely identifies Blackalicious as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

11.    On information and belief National Tobacco paid their sponsored musicians up to $5000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

12.    During the period of National Tobacco's illegal use of Plaintiffs' names,

Page 3 – PLAINTIFFS' COMPLAINT

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

photographs and biographies, Blackalicious performed 57 shows. Thus, had Blacklicious entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Blacklicious's right of publicity, National Tobacco would have paid approximately $285,000.

## FIRST CAUSE OF ACTION

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

13.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 12, inclusive.

14.     National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with National Tobacco and Plaintiffs' sponsorship, or approval of National Tobacco's goods and commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. § 1125(a).

15.     National Tobacco's acts of unfair competition are willful and deliberate and are made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

16.     By reason of National Tobacco's acts of false designation, description and representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue and substantial damage to their reputation and goodwill.

17.     Additionally, National Tobacco has unfairly profited from the acts of false designation, description and representation as alleged above, in an amount to be determined at trial.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

18.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 17, inclusive.

19.    Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

20.    National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

21.    As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no event less than $285,000.

22.    National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights. Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

23.    National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

24.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

25.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

26.     The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

### THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.)*

27.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 26, inclusive.

28.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California Bus. & Prof. Code § 17200 *et seq.*

29.     National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal. Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful business practices.

30.     National Tobacco acts of unfair competition have proximately caused and will continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be determined at trial.

31.     National Tobacco's acts of unfair competition also have caused and are causing irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

### PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL and demands judgment in their favor against Defendant as follows:

Page 6 – PLAINTIFFS' COMPLAINT

(i)    Plaintiffs' general, special and actual damages in a sum to be determined at trial but in no event less than $285,000;

(ii)    Defendant's profits pursuant to 15 U.S.C. § 1125, Cal. Civ. Code § 3344 and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages pursuant to Cal. Civ. Code § 3344;

(iii)    Judgment for punitive damages in a sum to be determined at trial;

(iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to Cal. Civil Code § 3344(a); and

(v)    Such other and further relief as the Court deems just and proper.


DATED:  April 11, 2008

MCNAMER AND COMPANY, PC


By _____
    **Anthony E. McNamer, CSB #178911**
    **MCNAMER AND COMPANY, PC**
    519 SW Third Avenue, Suite 601
    Portland, Oregon 97204
    Telephone: (503) 727-2500
    Facsimile: (503) 727-2501

    Attorneys for Plaintiffs

Page 7 – PLAINTIFFS' COMPLAINT



ABOUT ZIG-ZAG LIVE ▼      PHOTOS ▼      ARTISTS ▼

ZIG-ZAG ARTISTS
SPOTLIGHT ARTISTS
ZIG-ZAG JUKEBOX

Artists Archive Quick Links

### Blackalicious

June 12th, 2006

<--[endif]-->

A project formed from the
shards of the San Francisco
bay-area hip-hop scene,
Blackalicious has been spitting
out their quirky brand of trans-
genred hip-hop for almost 15
years now. Infusing funk and
soul into much of their work,
Blackalicious is West Coast
underground hip-hop in every
sense of the term. Essentially a
duo consisting of emcee Gift of
Gab and beat-dropper/producer
Chief Xcel, the pair's literary
and inherently sanguine
sensibilities are more in line with those of fellow Californians Jurassic 5 than,
say, Dr. Dre. Their latest, 2005's *The Craft*, dropped in late 2005.

http://www.blackalicious.com/

© CMJ | Bolloré, SA      Privacy Policies  Contest Rules

Exhibit A

# EXHIBIT 4

E-filing

ANTHONY E. MCNAMER CSB #178911
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon 97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs



FILED
APR 11 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Fee
PoC
iss.
(3)

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADR

**RAYMOND RILEY** p.k.a. Boots Riley,
**SOLOMON DAVID** and **MARLON IRVING**
p.k.a. Lifesavas

**PLAINTIFFS,**

v.

**NATIONAL TOBACCO COMPANY, LP**

**DEFENDANT.**

Case No.  **C08-01931**

EMC

**COMPLAINT FOR:**

1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**
2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**
3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 et. seq.)**

**DEMAND FOR JURY TRIAL**



NOTICE OF ASSIGNMENT TO MAGISTRATE JUDGE SENT

or their complaint against Defendant, Plaintiffs allege as follows:

**I.**

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

ises under the unfair competition laws of the United States.   The Court also has jurisdiction

rsuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT

EXHIBIT 4

amount in controversy exceeds $75,000.

2.      This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.      Plaintiff Raymond Riley is a resident of Alameda County, California and is

professionally known as Boots Riley.

4.      Plaintiff Solomon David is a resident of Alameda County, California and Plaintiff

Marlon Irving is a resident of Portland, Oregon, and they are professionally known as the

musical group Lifesavas

5.      Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

6.      Boots Riley is a musical artist and a co-founder of the musical group The Coup.

Boots Riley was raised amidst political action in Oakland, California, where, since the age of

fifteen, he's been involved in organizing and inspiring youth.  From student organizing in

Oakland's public schools, to serving on the central committee for the Progressive Labor Party, to

holding the presidential position for InCAR (International Committee Against Racism), and

organizing to build California's Anti-Racist Farm Workers' Union, Boots Riley has been an

Page 2 – PLAINTIFFS' COMPLAINT

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

integral part of a progressive struggle for positive change through culture and has used his music as a medium to promote that change. Boots Riley's music and image presents a decidedly anti-corporate message.

7.      Lifesavas are part of the positive hiphop movement. They are a musical group who have built their career addressing such issues as politics, family, social justice, drug abuse, religion and racial progress. Their music is conscientious and their image has always been about motivating kids and adults to stay drug and alcohol free. Their music also encourages their fans to be aware of the problems associated with such abuses.

8.      National Tobacco is a large tobacco company. Through a license, they are the exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

9.      Beginning in April 2006, National Tobacco began an enormous national and international marketing campaign centered on the website ZigZagLive.com (the "Website"). As part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live Club Tour (the "Tour"), which began in 2006 and continues to this day. On information and belief, National Tobacco paid musical artists to sponsor and promote their products. National Tobacco entered into agreements with sponsored artists granting National Tobacco specific rights to use sponsored artists' names, likenesses, and biographies on the Website. These sponsored and endorsing artists were featured prominently on the Website, and the Tour also featured these sponsored artists along with other non-sponsored artists.

10.      On information and belief National Tobacco spent millions of dollars on this ZigZagLive.com marketing campaign and continues to use the Website to promote its products. Indeed, the ZigZag.com website contains almost no content. The Website, however, contains substantial content and accounts for nearly all of Zig-Zag's web presence and branding.

Page 3 – PLAINTIFFS' COMPLAINT

11.    On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

12.    National Tobacco's products effectively represent a corporate ideology that puts profits above the public's health and well-being. Plaintiffs have never endorsed tobacco products, and would never endorse tobacco products.

13.    On or about October 17, 2007, National Tobacco began using Boots Riley's names, photograph and biography to promote Zig-Zag brand products on the Website. National Tobacco continued to use Boots Riley's name, photograph and biography to promote its products through April 4, 2008. A true and correct copy of the unauthorized Boots Riley promotional materials used by National Tobacco on the Website, which false identifies Boots Riley as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

14.    On or about October 25, 2007, National Tobacco began using Lifesavas' name, photograph and biographies to promote Zig-Zag brand products on the Website. National Tobacco continued to use Lifesavas' name, photograph and biographies to promote its products through April 4, 2008. A true and correct copy of the unauthorized Lifesavas promotional materials used by National Tobacco on the Website, which falsely identify Lifesavas as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit B.

15.    Given the message Plaintiffs have spread throughout their careers, the use of Plaintiffs' names, photographs and biographies to promote Big Tobacco's products and agenda is particularly damaging. Plaintiffs would never license use of their names, photographs and biographies to promote tobacco products. Lifesavas, for example, share the same view as the National Association of African-Americans for Positive Imagery, who has shown that the

Page 4 – PLAINTIFFS' COMPLAINT

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

African-American community has been exploited by tobacco companies. Indeed, significant research confirms that tobacco companies have specifically targeted the African-American community.

16.    Such apparent affiliation with, and sponsorship of, National Tobacco and its products has severely damaged Plaintiffs' reputation, as their fans now perceive Plaintiffs to be profiting from the sale of tobacco products.

17.    On information and belief, National Tobacco paid their sponsored musicians up to $5,000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

18.    During the period of National Tobacco's illegal use of Plaintiffs' names, photographs and biographies, Boots Riley performed 50 shows and Lifesavas performed 27 shows. Thus, had Boots Riley entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Boots Riley's right of publicity, National Tobacco would have paid approximately $250,000. Had Lifesavas entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Lifesavas's right of publicity, National Tobacco would have paid approximately $135,000.

## FIRST CAUSE OF ACTION

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

19.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 18, inclusive.

20.    National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to

Page 5 – PLAINTIFFS' COMPLAINT

cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with National Tobacco, and Plaintiffs' sponsorship or approval of National Tobacco's goods and commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. § 1125(a).

21.     National Tobacco's acts of unfair competition are willful and deliberate and are made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

22.     By reason of National Tobacco's acts of false designation, description and representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue and substantial damage to their reputation and goodwill.

23.     Additionally, National Tobacco has unfairly profited from the acts of false designation, description and representation as alleged above, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

24.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 23, inclusive.

25.     Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

26.     National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

27.     As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no

Page 6 – PLAINTIFFS' COMPLAINT

event less than $250,000 for Boots Riley and $135,000 for Lifesavas.

28.     National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights. Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

29.     National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

30.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

31.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

32.     The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

### THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)

33.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 32, inclusive.

34.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California

Page 7 – PLAINTIFFS' COMPLAINT

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

Bus. & Prof. Code § 17200 *et seq.*

35.    National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal.

Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful

business practices.

36.    National Tobacco acts of unfair competition have proximately caused and will

continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be

determined at trial.

37.    National Tobacco's acts of unfair competition have also caused and are causing

irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL

and demands judgment in their favor against Defendant as follows:

(i)    Plaintiffs' general, special and actual damages in a sum to be determined

at trial but in no event less than: $250,000 to Boots Riley and $135,000 to Lifesavas;

(ii)    Defendant's profits pursuant to 15 U.S.C. § 1117, Cal. Civ. Code § 3344

and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages

pursuant to Cal. Civ. Code § 3344;

(iii)    Judgment for punitive damages in a sum to be determined at trial;

(iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to

15 U.S.C. § 1117 and Cal. Civil Code § 3344(a); and

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

(v)    Such other and further relief as the Court deems just and proper.


DATED:  April 11, 2008

                            **MCNAMER AND COMPANY, PC**


By _____
          **Anthony E. McNamer,** CSB #178911
          **MCNAMER AND COMPANY, PC**
          519 SW Third Avenue, Suite 601
          Portland, Oregon 97204
          Telephone: (503) 727-2500
          Facsimile: (503) 727-2501

                  Attorneys for Plaintiffs

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

Zig Zag Tour Live » Artists - Windows Internet Explorer

http://www.zigzaglive.com/live/?cat=6#933

File   Edit   View   Favorites   Tools   Help

Google C▼      Go ▼ ✇ ➡ ⚙ 🔖 ▼ ◆ ▼ 🔖 ▼ RS ▼ 🔖 ▼ 🔖 Bookmarks▼ 🔖 1528 blocked | ⚓ Check ▼ 🔍 AutoLink ▼ 🔖 AutoFill 🔖 Send to▼ ✎

🔖 Free Hotmail 🔖 Windows 🔖 Windows Marketplace 🔖 Windows Media

🔖 🔖 🔖 Zig Zag Tour Live » Artists

🔖 ▼ 🔖 ▼ 🖶 ▼ 🔖 Page ▼ 🔖 Tools ▼

back to top

## Boots Riley
October 17th, 2007



Boots Riley is a co-founding member, producer, songwriter, and arranger of the revolutionary hip-hop group the Coup, but Riley's penchant for activism and rebellious tactics go back to his teenage years. After organizing activist groups in his high school, Riley served on the central committee for the Progressive Labor Party, held the presidential seat on the International Committee Against Racism, and helped to organize the Anti-Racist Farm Workers' Union in California. In 1991, along with a group of fellow artists and political activists, Riley formed the Mau Mau Rhythm Collective, which held local hip-hop concerts to help promote awareness for the causes of civil liberties organizations such as the Women's Economic Agenda Project and various other anti-police brutality campaigns. As a result of these performances, the Coup was formed later that year, releasing their first album *Kill My Landlord* in 1993. *Genocide and Juice* followed in 1994, after which their label folded, and Riley went into retirement from music. He returned music with the Coup in 1998, releasing *Steal This Album* that year and *Party Music* in 2001, which was rated "best rap album of the year" by several publications including *Rolling Stone*. *Pick a Bigger Weapon* came in 2006, freshly combining the outrage of Public Enemy with the grooves of the live musicianship found on classic Prince or Parliament/Funkadelic records. Having made a guest appearance on

🔖 🔖 🔖 🖥 🔖 🔖 🔖 Internet

🔖 start   🔖 🔖 🔖 🔖 🔖 🔖 🔖   🔖 Zig Zag Tour Live » A...      🔖🔖🔖🔖🔖🔖🔖   Wednesday, March 12, 2008



Exhibit A, 2 of 2

ABOUT ZIG-ZAG LIVE ▼          ARTISTS ▼

ZIG-ZAG ARTISTS
SPOTLIGHT ARTISTS
ZIG-ZAG JUKEBOX

RE FANS AND BANDS CONNECT

Artist of the Day Archive Quick Links ▼

## Lifesavas

October 27th, 2007

Portland, Oregon hip-hop duo Lifesavas met
during a pick-up basketball game and quickly
became aware of each other's rapping skills.
MC Vursatyl and Producer/MC Jumbo the
Garbageman recorded the single "Grand
Larceny" under the title of Lifesavas and were
subsequently picked up by label Quannum.
They released their second single
"Headexercise" for Quannum and did some
extensive touring with labelmates Blackalicious. In 2003, Lifesavas released
their debut album *Spirit in Stone*, which gave the hip-hop community a glimpse
of their unique politically and spiritually conscious lyricism. The duo took a
huge creative leap forward for their next release *Gutterfly*. Lifesavas created
the idea of a never completed blaxploitation film of the same name, and told the
un-made movie's story through its main characters Bumpy Johnson and Sleepy
Floyd. The album describes the land of Razorblade City through positive vibes
that recall early De La Soul, as well as grittier tracks that underline the racial
profiling and violence of the fictional city. Look for these hip-hop visionaries on
this November's Zig-Zag Live Tour with Galactic.

www.myspace.com/lifesavas



Exhibit B