**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. Blackalicious**<br><br>        **PLAINTIFFS,**<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY LP**<br><br>        **DEFENDANT**. | **Case No. C-08-01933 JSW**<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

## MEMORANDUM OF POINTS & AUTHORITIES

### I.     SUMMARY OF ARGUMENT.

Plaintiffs are musical artists, specifically they are part of the positive hip hop movement. They have never had <u>any</u> contact with Defendant National Tobacco Company LP.  Plaintiffs did not enter into a sponsorship agreement allowing National Tobacco to use their names, likeness and biographies to promote tobacco products (including Zig-Zag brand rolling papers).  When Plaintiffs discovered that National Tobacco was violating their rights of publicity by advertising them as sponsored "Zig-Zag Artists," Plaintiffs sent a cease and desist letter from California to Kentucky, National Tobacco's headquarters, giving National Tobacco until April 4, 2008 to cease all use of Plaintiffs' names, likeness and biographies and to pay Plaintiffs for the prior unauthorized use.  On April 4, 2008, National Tobacco filed a declaratory relief action in the Southern District of New York.

National Tobacco now moves to dismiss, stay or transfer this action in favor of the New York suit.

First, the New York suit is textbook anticipatory forum shopping.  It was filed on the same day of the deadline given by Plaintiffs.  It was filed before Plaintiffs' counsel spoke to National Tobacco's counsel.  The only relation these claims have to New York, is that National Tobacco's counsel has offices in New York.

Second, New York is not a proper venue for this action.  New York has nothing whatsoever to do with Plaintiffs' claims.

### II.     STATEMENT OF ISSUES TO BE DECIDED.

1.     Whether Defendant's New York filing was anticipatory and forum shopping and therefore is an exception to California's first-to-file rule.

2.    Whether the New York is a proper venue for the present action.

3.    Whether the convenience of the Defendant outweighs the convenience of the Plaintiffs filing where they reside enough to warrant transferring the present action to New York under 28 U.S.C. 1404.

### III.    STATEMENT OF FACTS.

**A.    The Parties.**

Timothy Parker ("Parker") and Xavier Mosley are both residents of Oakland, California. Parker Dec. ¶ 2; Mosley Dec. ¶ 2. Parker and Mosley perform together professionally in the musical group Blackalicious. Parker Dec. ¶ 1; Mosley Dec. ¶ 1. Blackalicious is a seminal indie hiphop group. Blackalicious has always been on the forefront of the "positive" rap movement. Its lyrics are often spiritual, introspective and uplifting rather than violent or misogynistic. Parker Dec. ¶ 3; Mosley Dec. ¶ 3.

National Tobacco Company, LP ("National Tobacco") is a large tobacco company. Through a license, it also is the exclusive United States distributor of Zig-Zag brand rolling papers. National Tobacco began an enormous national and international marketing campaign in April of 2006, which included a national music tour entitled Zig-Zag Live Club Tour (the "Tour"). National Tobacco pays musical artists to sponsor and promote its products on a website located at the url ZigZagLive.com (the "Website"). The Website contains substantial content and accounts for nearly all of National Tobacco's web presence and branding as Zig-Zag. The Tour, however, features sponsored artists as well as non-sponsored artists.

**B.    The ZigZagLive.com Website.**

Recently, Plaintiffs discovered National Tobacco, through its Website, advertised Blackalicious as a "sponsored" artist, *i.e.,* a "Zig-Zag Artist," who promoted and endorsed

National Tobacco's products.  Parker Dec. ¶ 4; Mosley Dec. ¶ 4.  The information on the Website included Blackalicious's member's names, photograph and biography.  *Id.* Blackalicious's "sponsorship" was advertised on the Website from April 2006 through early April 2008.  *Id.*

Plaintiffs were confused, surprised and alarmed by their inclusion on the Website.  Each Plaintiff personally, and in his profession, promotes a positive message to the community and individual.  Parker Dec. ¶¶ 3-4; Mosley Dec. ¶¶ 3-4.   National Tobacco's national and international use of Plaintiffs photographs, names and biography on its Website injures Plaintiffs reputation and ability to successfully perform in California, the Pacific Northwest and throughout the United States.  Parker Dec. ¶ 10; Mosley Dec. ¶ `0.

**C.**  **The Phoenix Best Music Poll 2006 Agreement**

National Tobacco alleges that its sponsorship agreement with Phoenix Media regarding the Phoenix Best Music Poll 2006 show (the "Phoenix Sponsorship Agreement") gives it the right to use Plaintiffs publicity rights to market its products.   On its face, the Phoenix Sponsorship Agreement only relates to where National Tobacco's Zig-Zag Live mark will appear in Phoenix Media's advertising.  *See* Chane Dec. Ex. A.  It does not mention Blackaliciuos or any other artist, and does not purport to grant any rights to Zig-Zag in relation of the artists performing in the Phoenix Best Music Poll 2006 show.[1]  *Id.*

**D.**  **The New York Suit.**

After discovery of their purported "sponsorship" by Zig-Zag and the violation of their

---

[1] Chane Dec. Ex. B shows several performers and several sponsors of the event (including Budweiser). Significantly, the internationally famous reggae artist, and Hasidic Jew, Matisyahu is listed on the exhibit. Obviously, Matisyahu is not a spokesman for Budweiser or Zig-Zag.  Interestingly, despite Matisyahu's inclusion in the show, National Tobacco did not advertise Matisyahu on the Website.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

publicity rights, Plaintiffs sought the advice of counsel.  On March 28, 2008 Plaintiffs' counsel sent a letter from <u>California</u> to National Tobacco's headquarters in <u>Kentucky</u>.  Dec. of Anthony McNamer ¶4.    The letter outlined Plaintiffs' position regarding National Tobacco's false designation of origin under the federal trademark act, misappropriation of Plaintiffs' right to publicity under California common law, and unfair competition per the California Professional Code (the "Cease and Desist Letter").   The letter demanded National Tobacco cease use of Plaintiffs' names and likenesses on the Website, demanded recompense for the use, and stated the offer to settle would remain open until April 4, 2008.  After that date, the Plaintiffs would file suit in California and Oregon.  *See* McNamer Dec. ¶ 4, Ex. 1.

On April 4, 2008, the day of the deadline and <u>prior to discussing the matter with Plaintiffs' counsel</u>, National Tobacco filed a declaratory relief suit in New York.  *See* McNamer Dec. ¶ 5, Ex. 4.[2]

Plaintiffs had no opportunity to file an infringement suit in a proper and convenient forum without unfairly violating the deadline they themselves imposed on National Tobacco.  Plaintiffs filed the present matter on April 11, 2008.  McNamer Dec. ¶ 6.

## IV.    ARGUMENT

### A.    The First-to-File Rule Does Not Apply.

The first-to-file rule gives a court the discretionary power to transfer, stay or dismiss an action when a similar complaint is filed in another federal court.  *Z-Line Designs, Inc. v. Bell'O International LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003) citing *Ward v. Follett Corp.,* 158

---

[2] Plaintiffs received a letter via email from National Tobacco's attorney at approximately 7:50 PDT on April 4, 2008.  McNamer Dec. ¶5, Ex. 2.  Emails were exchanged arranging a time to discuss the matter and counsel discussed the matter at approximately 5:30pm EDT. *Id.* at ¶5. Unbeknownst to Plaintiff, National Tobacco had already filed suit in New York. *Id*. at ¶5.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

F.R.D. 645, 648 (N.D. Cal. 1994).  While the first-to-file rule should not be disregarded lightly, "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."  *Z-Line Designs, Inc.,* 218 F.R.D. at 665, citing *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 627-28 (9th Cir. 1991).  Three threshold factors determine the application of the rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  *Z-Line Designs, Inc.,* 218 F.R.D. at 665 citing *Ward,* 158 F.R.D. at 648.

**1.     National Tobacco's New York Suit is Anticipatory Forum Shopping.**

The first-to-file rule is not applied if the first suit amounts to bad faith, an anticipatory suit or forum shopping.  *Z-Line Designs, Inc.,* 218 F.R.D. at 665.  An anticipatory suit is filed in the face of receipt of specific, concrete indications that a suit is imminent.  *Id.*  Anticipatory suits are disfavored as they are an example of forum shopping.  *Id.*  Additionally, relatively short time periods between the filing of two similar cases diminishes the importance of an earlier filing date.  *Id.* at 667 referencing *Recoton Corp. v. Allsop, Inc.* 999 F. Supp. 574, 577 (S.D.N.Y. 1998) (refusing to apply first-to-file rule where two days separated two actions); *Riviera Trading Corp. v. Oakley, Inc.,* 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996) (four days); *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (20 days).

National Tobacco filed its New York suit to forum shop and completely in anticipation of the present matter.  Plaintiffs sent National Tobacco a letter on March 28, 2008 giving it until April 4, 2008 to accept an offer of settlement.  After that date Plaintiffs state they "will file suit in Oregon and California."  *See* McNamer Dec. ¶ 4, Ex. 1.  National Tobacco contacted Plaintiffs' counsel on the day of the deadline.  McNamer Dec. ¶ 5.  Prior to even talking with Plaintiffs' counsel, National Tobacco filed suit in New York.  McNamer Dec. ¶ 5.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

National Tobacco's reliance on *Palantir Technologies, Inc. v. Palantir.net, Inc.,* 2007 U.S. Dist. LEXIS 24294 (N.D. Cal. 2007) and *Sony Computer Entertainment America Inc. v. America Medical Response, Inc.,* 2007 U.S. Dist. LEXIS 76830 (N.D. Cal. 2007) is misplaced. In *Sony,* parties to a suit attempted to resolve the dispute between them for over four months. In the last communication between the parties before the declaratory relief action was filed, the defendant declined an offer to settle and invited the plaintiff to make another offer. The defendant at the time stated it <u>might</u> file a suit if plaintiff did not cease using defendant's trademark. Similarly in *Palantir,* the defendant stated it would "take legal action to protect its interests" and invited negotiation.

Plaintiffs in this matter were not equivocal with their deadline. Plaintiffs concretely stated they "will" file suit if the offer to settle was not accepted by April 4, 2007. National Tobacco's decision to file on the day of the deadline, and before discussing the matter with Plaintiffs' counsel, shows the specific, concrete, imminence of that deadline. National Tobacco's New York suit is anticipatory forum shopping, therefore an exception to the first-to-file rule.

## 2.     The New York Suit is an Improper Use of the Declaratory Judgment Act.

Moreover, it is improper to invoke the Declaratory Judgment Act to "deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *Z-Line Designs, Inc.,* 218 F.R.D. at 665. Indeed, when a declaratory relief action is triggered by a cease and desist letter, equity militates in favor of allowing the second filed action continue rather that the first. *Id.* at 667. Similarly, the courts have found when a declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed later. *Xoxide, Inc. v. Ford Motor Co.,* 448 F. Supp. 2d 1188, 1193 (N.D.

Cal. 2006).

National Tobacco's New York suit, filed on the day of Plaintiffs' deadline, was wholly triggered by Plaintiffs' cease and desist letter and in anticipation of Plaintiffs' infringement action. The circumstances in this action are entirely analogous to *Z-Line Designs, Inc.* 218 F.R.D. at 663. In *Z-Line,* the anticipatory filing at issue occurred one day before a final deadline given by defendants and was triggered by a cease and desist letter. The court held that equity weighed in favor of the second-filed action, the short time frame between the filings (two days) diminished the importance of the earlier filing date, and, finally, the totality of the circumstances concluded that the declaratory suit was filed because of the infringement suit's imminent threat. Moreover the court found "potential plaintiffs should be encouraged to attempt settlement discussions…prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files a complaint." *Z-Line Designs, Inc.* 218 F.R.D. at 666-667.

National Tobacco's secretive filing of the New York suit while maintaining the pretense of negotiation at the time of the deadline also parallels the circumstances of *Xoxide, Inc.* 448 F.Supp. 2d at 1188. In *Xioxide*, the plaintiffs sent timely responses to the defendant's demands to cease infringing on Ford's trademarks. Plaintiffs responded to defendants letters on or before each deadline and the defendants delayed resorting to judicial resolution during the negotiation. Additionally, the plaintiffs made concessions to defendants agreeing to destroy products with marks confusingly similar to the defendant's. At the same time and unbeknownst to the defendants, the plaintiffs in *Xoxide* filed a declaratory judgment action as "insurance" in California.

Here, as with *Xoxide, Inc.,* National Tobacco made timely contact with Plaintiffs with the

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

pretense of negotiation.  In its letter, National Tobacco also agreed to remove any and all references to Plaintiffs on its Website.  Unbeknownst to Plaintiffs on that same day, National Tobacco filed a declaratory relief action in New York.  As with *Xoxide*, *Inc.*, "to impose the 'first-to-file' doctrine in this instance…would unreasonably penalize [Plaintiffs], which attempted to resolve the dispute before filing suit."  448 F.Supp. 2d at 1194.

National Tobacco filed its declaratory judgment suit in New York not to settle insubstantial, ephemeral allegations by Plaintiffs, but to choose its own forum.  National Tobacco filed its suit in New York on the day of Plaintiffs' deadline prior to even speaking with Plaintiffs' counsel.  McNamer Dec. ¶5.  Indeed, National Tobacco sent a letter to Plaintiffs' counsel the day of the deadline inviting further discussion and professing its disinterest in litigation.  *See* McNamer Dec. ¶5, Ex. 2.  National Tobacco is improperly invoking the Declaratory Judgment Act to deprive Plaintiffs of their conventional choice of forum and timing, precipitating a disorderly race to the courthouse.  As such, National Tobacco's motion to dismiss or stay the present action must be denied.

### 3.    New York Is Not a Proper Venue.

Venue is proper in an action not based solely on diversity of citizenship in a judicial district in which a <u>substantial</u> part of the actions giving rise to the claim occurred.  28 U.S.C. 1391(b)(2).

National Tobacco's anticipatory New York suit is premised upon a cease and desist letter sent from <u>California</u> to National Tobacco's headquarters in <u>Kentucky</u> regarding advertisements on a Website that is located on the <u>internet</u>.[3]

---

[3] The fact that the Website is accessible in New York is insufficient to support venue under 28 U.S.C. 1391.  *See Jamba Juice Company v. Jamba Group, Inc.*, 2002 U.S. Dist. LEXIS 9459, *7-8 (N.D. Cal. 2002).  The Website can and is viewed throughout the country.  The injury of National Tobacco's

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

National Tobacco has absolutely no basis for filing this suit in New York. The Phoenix Best Music Poll 2006 was in Boston, Massachusetts. Plaintiffs had absolutely no contact with National Tobacco before, during, or after the event in Boston or anywhere (including New York). Mosley Dec. ¶ 4; Parker Dec. ¶ 4. The only relationship that New York has to this dispute is that is where National Tobacco's counsel has <u>one</u> of its many offices. No relevant events, let alone a "substantial part of the events," took place in New York, and therefore venue is only proper where the Plaintiffs reside.[4]

**B.    Transfer Per 28 U.S.C. 1404(a) is Inconvenient for Plaintiffs and Unwarranted.**

A moveant bears the burden of justifying a transfer by a strong showing of convenience. *Sony Computer Entertainment America Inc. v. America Medical Response, Inc.,* 2007 U.S. Dist. LEXIS 76830 at *17-18. A motion to transfer may be denied "if the increased convenience to one party is offset by the added inconvenience to the other party." *Id.* The plaintiffs' choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer. *Id.* This is particularly true if the choice of forum is the plaintiffs' domicile. *Id.*

Plaintiffs reside in Oakland, California. National Tobacco is a large company headquartered in Kentucky with offices in many states, including California. No party to this action resides or is headquartered in New York. Plaintiffs' contacts with New York are brief and sporadic (they play shows there every so often), and have nothing to do with Plaintiffs' claims. Parker Dec. ¶ 8; Mosley Dec. ¶ 8. It is incredibly inconvenient for these individual, working-

---

violation of Plaintiffs' publicity rights is felt by Plaintiffs where they reside. Parker Dec. ¶ 10; Mosley Dec. ¶ 10.

[4] On May 29, 2008, Plaintiffs filed a Motion to Dismiss for Improper Venue and Forum Non Conveniens in the New York action.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

class, musicians to travel across the country prosecute this suit in New York.   Parker Dec. ¶10;
Mosley Dec. ¶10.   Additionally, National Tobacco's counsel has offices in San Francisco,
whereas Plaintiffs have been forced to hire separate New York counsel to defend the anticipatory
New York suit.

## V.      CONCLUSION

For the foregoing reasons, National Tobacco's Motion must be denied in its entirety and
this matter allowed to continue as presently filed in the U.S. District Court, Northern District of
California.


Dated: May 30, 2008                          MCNAMER AND COMPANY PC



                                             /Anthony E. McNamer/
                                             _____
                                             Anthony E. McNamer
                                             Of Attorneys for Plaintiffs

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the following:

1.   **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER;**

2.   **DECLARATION OF TIMOTHY PARKER IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

3.   **DECLARATION OF XAVIER MOSLEY IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

4.   **DECLARATION OF ANTHONY MCNAMER IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER; and**

5.   **PROPOSED ORDER DENYING DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**

have been served the counsel of record for Defendant via the Court's electronic filing system on

May 30, 2008.

 

/s/ Deborah Gumm
Anthony E. McNamer
Deborah Gumm
**McNamer and Company, PC**
519 S.W. Third Avenue
Suite 601
Portland, OR 97204
(503) 727-2504
Fax: (503) 727-2501

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

Case No. C-08-01933 JSW
Page 1 – OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **TIMOTHY PARKER and XAVIER MOSLEY p.k.a. Blackalicious**<br><br>**PLAINTIFFS**,<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT**. | **Case No. C-08-01933 JSW**<br><br>**TIMOTHY PARKER'S DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Timothy Parker, declare and state as follows:

1.      I am a member of the musical group Blackalicious.   Xavier Mosley is the

other member of the group.

2.      I am an individual and I reside in Oakland, California.

3.      Blackalicious is a seminal indie hiphop group.  We have always been at

the forefront of the "positive" rap movement.  Our lyrics are spiritual, introspective and

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

uplifting rather than violent or misogynistic.

4.      It was recently discovered that, since April 2006, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig-Zag branded products.  For two years National Tobacco advertised us on their website as "Zig-Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.   I have never had any contact with National Tobacco or any Zig Zag Live representatives.

5.      On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that it cease its violation of our right of publicity and compensate us for the nearly two years in which it has been unlawfully using our names, likeness and biography to promote their products.

6.       National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.

7.       On April 11, 2008 a substantive lawsuit was filed by Xavier Mosley and me against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01933, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008.

8.      Other than the occasional performance in New York, I have no contacts with New York.   I do not reside there.   Both Xavier Mosely and I reside in Oakland,

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

California. I assume that we would be the primary witnesses in this case, along with our manager, who also resides in California. We are both individuals, trying to make a living as musical artists. It would be incredibly expensive and inconvenient to force us to defend an action in New York. This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

9.      It would also be completely inefficient to force the individual plaintiffs to defend an action in New York, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California. National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

10.      National Tobacco's use of Blackalicious's and my name, photograph and biography on its website injures my professional reputation and my ability to perform in California, the Pacific Northwest and throughout the United States.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 29, 2008 in Oakland, California.

Timothy Parker

Case No. C-08-01933 JSW
Page 3 – DECLARATION OF TIMOTHY PARKER

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **TIMOTHY PARKER and XAVIER MOSLEY p.k.a. Blackalicious**<br><br>    **PLAINTIFFS**,<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>    **DEFENDANT**. | **Case No. C-08-01933 JSW**<br><br>**XAVIER MOSLEY'S DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER**<br><br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Xavier Mosley, declare and state as follows:

1.    I am a member of the musical group Blackalicious.   Timothy Parker is the

other member of the group.

2.    I am an individual and I reside in Oakland, California.

3.    Blackalicious is a seminal indie hiphop group.  We have always been at

the forefront of the "positive" rap movement.  Our lyrics are spiritual, introspective and

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

uplifting rather than violent or misogynistic.

4.      It was recently discovered that, since April, 2006, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig-Zag branded products.  For two years National Tobacco featured us on their website as "Zig-Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity. I have never had any contact with National Tobacco or any Zig Zag Live representatives.

5.      On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that it cease its violation of our right of publicity and compensate us for the nearly two years in which it has been unlawfully using our names, likeness and biography to promote their products.

6.       National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.

7.       On April 11, 2008 a substantive lawsuit was filed by Timothy Parker and me against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01933, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008.

8.      Other than the occasional performance in New York, I have no contacts with New York.   Timothy Parker and I both reside in Oakland, California.   I assume that

we would be the primary witnesses in this case, along with our manager, who also resides

in California. We are all individuals, trying to make a living as musical artists. It would

be incredibly expensive and inconvenient to force us to defend an action in New York.

This is particularly true since National Tobacco is headquartered in Louisville, Kentucky,

and the only nexus New York has to this action is that National Tobacco's attorneys have

an office there.

      9.    It would also be completely inefficient to force the individual plaintiffs to

defend an action in New York, when the substantive claims that underlie National

Tobacco's declaratory relief "claims" are all contained in the action currently pending in

the Northern District of California. National Tobacco's counsel also has an office in San

Francisco, and has appeared on their behalf in the California action.

      10.    National Tobacco's use of Blackalicious's and my name, photograph and

biography on its website injures my professional reputation and my ability to perform in

California, the Pacific Northwest and throughout the United States.


I hereby declare that the above statement is true to the best of my knowledge and belief

and that I understand that is made for use as evidence in court and is subject to penalty

for perjury.

      EXECUTED on May 29, 2008 in Oakland, California


                        Xavier Mosley


Case No. C-08-01933 JSW
Page 3 – DECLARATION OF XAVIER MOSLEY

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

   Attorneys for Plaintiffs

<br>

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

<br>

| | |
|---|---|
| **TIMOTHY PARKER and XAVIER MOSLEY p.k.a. Blackalicious**<br><br>     **PLAINTIFFS,**<br><br> v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>    **DEFENDANT.** | Case No. C-08-01933 JSW<br><br>**ANTHONY MCNAMER'S DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Anthony McNamer, declare as follows:

   1.  I represent the Plaintiffs in the above entitled matter.

   2.  I make this declaration in support of Plaintiffs' Opposition to Defendant's

Motion to Dismiss, Stay or Transfer.

   3.  I was contacted by Timothy Parker and Xavier Mosley (collectively

"Plaintiffs") in relation to National Tobacco's violation of their rights of publicity.

4.     On March 28, 2008, I sent a letter from California to National Tobacco's headquarters in Kentucky.   The letter outlined Plaintiffs' position regarding National Tobacco's violation, demanded National Tobacco cease all use of my clients' names, likeness and biographies, and further demanded payment for the prior unauthorized use. I gave National Tobacco until April 4, 2008 to comply with the demand or I would files suit on my clients' behalf.  A copy of that letter is attached hereto as Exhibit 1.

5.     On the morning of April 4, 2008 I received a letter from National Tobacco along with an email stating that she would like to discuss our demand.   The email attaching that letter is attached hereto as Exhibit 2.  We set up a time and had a telephone conference around 2:30 pm PDT (5:30 pm EDT).   Ms. Ballard asked me to send her the case that I believe supported my damages theory, so that she could consider it.   I sent her the case right after I got off the phone.   A copy of the 2:41 pm PDT (5:41 pm EDT) email is attached as Exhibit 3.  Unbeknownst to me, and direct contraction of Ms. Ballard purported interest in discussing settlement, Ms Ballard had already filed a declaratory relief case in the Southern District of New York.   Ms. Ballard  sent me the Complaint attached to an email at 9:36 am on April 7, 2008 (April 4th was a Friday). Attached as Exhibit 4 is a copy of the email attaching the New York complaint.

6.     I filed the complaint in the present action on April 11, 2008.

7.     A true and exact copy of the ZigZagLive.com Artist listing for Timothy Parker and Xavier Mosley, p.k.a. Blackalicious, is attached hereto as Exhibit 5.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

for perjury.

EXECUTED on May 29, 2008 in Portland, Oregon

_____
Anthony McNamer

Exhibit 1

# McNamer and Company



Intellectual Property • Entertainment • Sports • Litigation • Corporate

*Portland*
*Los Angeles*

Anthony McNamer
503.727.2504
anthony@mcnamerlaw.com

March 28, 2008

CONFIDENTIAL SETTLEMENT COMMUNICATION

VIA FACSIMILE (502-774-9235)

National Tobacco Company, LP
General Counsel
3029 W Muhammad Ali Blvd.
Louisville, KY 40212-2238

Re: Lanham Act and Right of Publicity Violations

This firm represents the musical group consisting of Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and the musical group consisting of Solomon David and Marlon Irving p.k.a. Lifesavas. It has come to our attention that since June 12, 2006, October 17, 2007 and October 25, 2007 respectively, you have been using my clients' names, likeness and biographies to promote Zig-Zag brand products on the ZigZagLive.com website (the "Website"). Your unlicensed and illegal use of my clients' names, likeness, and biographies constitutes violations 15 U.S.C. § 1125(a)(1)(A) and various state right of publicity laws, including California Civil Code §3344 and the common law of Oregon. My clients are particularly damaged by this use because they would never license use of their names, likeness and biographies to promote tobacco products. My clients' music does not promote smoking and they are appalled that their fans now perceive them to be profiting from the sale of tobacco products. Your persistent illegal acts have made it appear to these fans that they have "sold out" to a tobacco company. In addition to all parties' unwillingness to promote tobacco products, Boots Riley's music presents a decidedly anti-corporate message. Obviously, his apparent sponsorship by a tobacco company flies directly in the face of the message he has spread throughout his career.

Thus, while under normal circumstances my clients' actual damages would likely be a reasonable licensing fee, under the present circumstances there is no licensing fee that my clients would find reasonable. However, since monetary damages (and your immediate removal of my clients' names, likeness and biographies) are what we must work with, we have investigated what a standard licensing fee would be.

We are informed that if your company had sponsored my clients' live performances (which is what your company is doing in relation to many of the sponsored acts), you would pay between $3000 and $5000 per show. During the period of your illegal use, Blackalicious performed 57 shows, Boots Riley performed 50 shows and Lifesavas performed 27 shows. Thus, ignoring the fact that a license fee would be impossible to negotiate, you would have paid Blackalicious between $171,000 and $285,000, Boots

Exhibit 1; Page 1 of 2

Confidential
Page 2

Riley between $150,000 and $250,000 and Lifesavas between $81,000 and $135,000.  Also, with the sizable amount of cross marketing you've done (*e.g*. through sonicbids.com and CMJ) in relation to this campaign, it would not surprise me if the Website has been viewed several millions of times – thus resulting in far greater publicity than show sponsorships would ever garner.

Though my clients are entitled $285,000, $250,000 and $135,000 respectfully, and additionally are entitled to exemplary damages and their attorneys fees and costs, Blackalicious will settle their claims for $171,000, Boots Riley will settle his claims for the payment of $150,000 and Lifesavas will settle their claims for $81,000.  Further, you must immediately cease all use of their names, likeness and biographies, including all such use on the Website.

Our offer will remain open until April 4, 2008.  If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likeness and biographies by a tobacco company so as to mitigate any further damage to their reputation.  My clients will also file suit in California and Oregon (I am licensed in both states).   It obviously would be best for all parties to quickly and confidentially settle this matter.  I sincerely hope that is possible under the terms set forth above.

I look forward to your prompt response.


Very truly yours,

McNamer and Company



Anthony McNamer

519 SW Third Avenue, Suite 601 • Portland, Oregon 97204 • main: 503.727.2500 • fax: 503.727.2501 • www.mcnamerlaw.com

Exhibit 2

| | |
|---|---|
| **From:** | Ballard, Marcella [Marcella.Ballard@BAKERNET.com] |
| **Sent:** | Friday, April 04, 2008 7:51 AM |
| **To:** | anthony@mcnamerlaw.com |
| **Cc:** | Ballard, Marcella |
| **Subject:** | FW: Emailing: DOC975.PDF |
| **Attachments:** | DOC975.PDF |

<<DOC975.PDF>>

Please see the attached letter, I will call you to discuss later today.
Marci

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a
Swiss Verein.


Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication
(including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under
the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender
of the error and then immediately delete this message.  Click here or visit www.bakernet.com/disclaimer_bm  for other important
information concerning this message.

Exhibit 2; Page 1 of 1

Exhibit 3

**Subject:**                    Emailing: DOC975.PDF

-----Original Message-----
**From:** Anthony McNamer [mailto:anthony@mcnamerlaw.com]
**Sent:** Monday, May 26, 2008 1:58 PM
**To:** Deborah Gumm
**Subject:** Fwd: Emailing: DOC975.PDF

**Anthony E. McNamer, Esq.**
**McNamer and Company**
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*

Begin forwarded message:

**From:** Anthony McNamer <anthony@mcnamerlaw.com>
**Date:** April 4, 2008 2:42:55 PM PDT
**To:** "Ballard, Marcella" <Marcella.Ballard@BAKERNET.com>
**Cc:** Anthony McNamer <anthony@mcnamerlaw.com>
**Subject: Re: Emailing: DOC975.PDF**

Here is the case I was referring to.
Waits v. Frito-Lay, Inc., 978 F.2d 1093 (9th Cir. 1992), cert. denied, 506 U.S. 1080 (1993).

In Waits, the Ninth Circuit affirmed a $2.5 million verdict against Frito-Lay and its advertising agency on a voice imitation claim.

Singer Tom Waits sued Frito-Lay claiming false endorsement under the Lanham Act and misappropriation of his voice in a Frito-Lay radio commercial. After trial before Judge James Ideman in the United States District Court (Central District of California), the jury returned a $2.5 million verdict in Waits' favor comprised of $375,000 in compensatory damages, $2 million in punitive damages, and the remainder in attorneys' fees.

The Ninth Circuit affirmed, citing its holding in Midler v. Ford Motor Co., 849 F.2d 460, 463 (9th Cir. 1988): "when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort in California."

The court also affirmed the $2 million punitive damages award finding that defendants consciously disregarded Waits' right to control his identity. Waits, 978 F.2d at 1105. In affirming the compensatory damage award, the court referred to clear evidence of Waits' outspoken public stance against doing commercial endorsements, his embarrassment when the commercial aired, and the injury to his good will and future publicity value. Id. at 1103-1104

Anthony E. McNamer, Esq.

McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*


On Apr 4, 2008, at 11:28 AM, Ballard, Marcella wrote:

Okay.  I am in all afternoon.  I am stepping out now for about an hour
though.  marci

-----Original Message-----
From: Anthony McNamer [mailto:anthony@mcnamerlaw.com]
Sent: Friday, April 04, 2008 2:27 PM
To: Ballard, Marcella
Subject: Re: Emailing: DOC975.PDF

I'm actually in SF working on a case, but I can give you a call
sometime in the next couple hours when I get a break.

Anthony E. McNamer, Esq.

McNamer and Company

519 SW Third Ave, Suite 601

Portland, Oregon 97204

ph: 503.727.2504  fax: 503.727.2501

<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>

*Please Note Name and Email Change*


On Apr 4, 2008, at 11:24 AM, Ballard, Marcella wrote:

Anthony: are you in your office?  Why don't you call me, or I will

call
you.


-----Original Message-----
From: Anthony McNamer [mailto:anthony@mcnamerlaw.com]
Sent: Friday, April 04, 2008 2:24 PM
To: Ballard, Marcella
Cc: Kenneth Erlick; John Boyle
Subject: Re: Emailing: DOC975.PDF


Also, as an aside, Boots Riley did not accept a guitar from Zig Zag.
Galactic's guitarist received a guitar.  You should better research
the facts before you attempt to make a snide jab.



Anthony E. McNamer, Esq.
McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*




On Apr 4, 2008, at 7:50 AM, Ballard, Marcella wrote:


        <<DOC975.PDF>>


        Please see the attached letter, I will call you to discuss later
        today.
        Marci


        Marcella Ballard
        Counsel, Intellectual Property Group

BAKER & McKENZIE LLP

1114 Avenue of the Americas

New York, NY 10036

Tel: +1 212 626 4664

Fax: +1 212 310 1643

marcella.ballard@bakernet.com


Baker & McKenzie LLP is a member of Baker & McKenzie International, a

Swiss Verein.



Pursuant to requirements related to practice before the Internal

Revenue Service, any tax advice contained in this communication

(including any attachments) is not intended to be used, and cannot

be used, for the purposes of (i) avoiding penalties imposed under

the United States Internal Revenue Code or (ii) promoting, marketing

or recommending to another person any tax-related matter.


This message may contain confidential and privileged information. If

it has been sent to you in error, please reply to advise the sender

of the error and then immediately delete this message.  Click here

or visit www.bakernet.com/disclaimer_bm  for other important

information concerning this message.

<DOC975.PDF>

Exhibit 4

| **From:** | Ballard, Marcella [Marcella.Ballard@BAKERNET.com] |
|---|---|
| **Sent:** | Monday, April 07, 2008 9:36 AM |
| **To:** | anthony@mcnamerlaw.com |
| **Cc:** | Ballard, Marcella; Lakes, Joi |
| **Subject:** | Attached Complaint |
| **Attachments:** | Waiver of Service.pdf; Complaint_08CV03383.pdf; Judge Scheindlin Rules.pdf |

Mr. McNamer:

Attached is a complaint filed April 4, 2008.  Please reply by return email whether you will accept service on behalf of the named defendants.  Also attached is USDC SDNY waiver of service form.  Be advised that if you do not accept service and end up representing the named defendants, your clients will be liable for the costs of service for the summons and complaint.  I have also enclosed Judge Scheindlin's rules and procedures.

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Click here or visit www.bakernet.com/disclaimer_bm for other important information concerning this message.

Exhibit 5



**ANTHONY E. MCNAMER CSB #178911**
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

    Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| **TIMOTHY PARKER and XAVIER MOSLEY p.k.a. Blackalicious**<br><br>    **PLAINTIFFS**,<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>    **DEFENDANT**. | Case No. C-08-01933 JSW<br><br>[Proposed]<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

The motion of Defendant National Tobacco LP ("National Tobacco") to dismiss, stay or transfer in favor of its New York action; or in the alternative, to dismiss or transfer for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. 1406(a) or, in the alternative to transfer for the convenience of National Tobacco under 28 U.S.C. 1404(a) came regularly for hearing before this Court on June 20, 2008 at 9:00am.

After considering the moving and opposition papers, arguments of counsel, and all other matters presented to the Court, IT IS HEREBY ORDERED that:

National Tobacco's motion is hereby **DENIED.**

1.      Dismissal of this action is not warranted.  The prior filed action by National Tobacco against Plaintiffs and others in the United States District Court for the Southern District of New York was an anticipatory filing by National Tobacco.  National Tobacco filed its New York action on the day given by Plaintiffs' as a deadline to accept Plaintiffs' offer before Plaintiffs filed suit in California.  National Tobacco filed its New York suit in response to Plaintiffs cease and desist letter.  National Tobacco is improperly using the Declaratory Relief Act to forum shop.

2.      Transfer of this action is not warranted under 28 U.S.C. 1404(a).  Plaintiffs reside in Oakland California and Portland, Oregon.  National Tobacco has not shown that its inconvenience substantially outweighs the convenience of Plaintiffs choice of forum where they reside.

IT IS SO ORDERED.


Date:_____                    _____
                                                        The Honorable Jeffrey S. White
                                                        U.S. District Judge

Page 2 – PROPOSED ORDER DENYING  MOTION TO DISMISS, TRANSFER OR STAY